<u>**NOT FOR PUBLICATION**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTOPHER A.,<br><br>               Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | Civil No. 20-14483 (KMW) |

Appearances:

Adrienne Freya Jarvis, Esq.
          Counsel for Plaintiff Christopher A.

Katie M. Gaughan, Esq.
Social Security Administration – Office of General Counsel
          Counsel for Defendant Commissioner of Social Security

**WILLIAMS**, District Judge

<u>**OPINION**</u>

**I. INTRODUCTION**

This matter comes before this Court pursuant to 42 U.S.C. § 405(g) for review of the final

decision of the Commissioner of the Social Security Administration ("Commissioner") denying the

application of Plaintiff Christopher A. ("Plaintiff") for a period of disability and disability benefits

under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and for supplemental security

income under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. Plaintiff, who suffers

from degenerative disc disease[1] and schizoaffective and anxiety disorders, seeks benefits for the period beginning on June 1, 2017, the alleged onset date of disability, to July 18, 2019, the date that the Administrative Law Judge Frederick Timm ("ALJ") issued a written decision.

In the pending appeal, Plaintiff argues that the ALJ's decision must be reversed and remanded on two overarching grounds. Plaintiff argues that the ALJ, in assessing Plaintiff's residual functional capacity ("RFC"), erred by failing to properly consider, and provide sufficient reason for rejecting, the more restrictive opinion of treating physician, Dr. Rhoades[2]; and erroneously evaluated Plaintiff's activities of daily living to support the RFC assessment. Pl.'s Br. [ECF No. 13]. For the reasons stated below, the Court will remand this matter directing the ALJ to provide reasoning to support the rejection of Dr. Rhoades's opinion and his analysis concerning Plaintiff's activities of daily living.

## II. BACKGROUND

### A. Procedural History

On August 4, 2017, Plaintiff filed an application for a period of disability and social security disability benefits as well as supplementary security income alleging an onset date of June 1, 2017. Administrative Record (hereinafter "A.R.") [ECF No. 8], 213-220. Plaintiff's claim was initially denied by the Social Security Administration on November 17, 2017, and upon reconsideration on January 24, 2018. A.R. 84-133. Plaintiff filed a written request for hearing on February 15, 2018, and appeared and testified at a hearing before the ALJ on May 15, 2019, in

---

[1] This appeal addresses only the issues surrounding Plaintiff's mental impairments. Thus, the Opinion will not focus on the degenerative disc disease.
[2] The Dr. Rhoades opinion refers to the Mental RFC Statement dated April 18, 2019. Although Carol Calcerno, APN, also signed the Mental RFC Statement, for ease of reference, the Court will refer to it only as Dr. Rhoades's opinion.

Pennsauken, New Jersey. A.R. 21-73, 160-61. The ALJ issued his decision on July 18, 2019

denying Plaintiff benefits. A.R. 21-33. On August 27, 2020, the Appeals Council denied Plaintiff's

request for review. A.R. 10-15. This appeal timely follows.

   **B. Factual & Medical History**

   Plaintiff was born in 1971 and was under 50 years of age on July 18, 2019, the date of the

ALJ's decision. A.R. 22, 213. Plaintiff has a four-year college degree in general studies. A.R. 834.

Plaintiff's past jobs include IT technician, instructor, and pizza delivery driver. A.R. 44-48, 237,

250.

   Plaintiff has a long history of mental impairment. Medical records dating back to 2012

reflect the schizophrenia and anxiety diagnoses.[3]  A.R. 327. The record reflects fluctuations in

Plaintiff's mental condition, sometimes his symptoms are manageable and other times, they are not

due to medication non-compliance. Plaintiff's bouts of instability have led to emergency room

visits or inpatient hospitalizations. A.R. 538-623. Over the years, Plaintiff has been prescribed a

range of medications for his conditions including olanzapine, buspirone, trazodone, clonazepam,

and fluoxetine – with various adjustments in dosing to account for tolerance, side effects, etc. A.R.

327-344; 360-841. It appears that Plaintiff has been consistently prescribed Zyprexa (olanzapine)

since about the late 1990s. A.R. 334.

   Plaintiff treated with Mid-Atlantic Behavioral Health ("MABH") for individual therapy

and pharmacotherapy-medication management from late-2013 to 2015. A.R. 360-87. When

Plaintiff began treatment with MABH, he was at risk of running out of medication due to a recent

_____

[3] Plaintiff reported that he was originally diagnosed in 1992. A.R. 420.

3

relocation from Indiana to New Jersey, however, this matter was resolved in early-2014. A.R. 360-66. The record reflects that Plaintiff was consistently well-groomed, able to maintain focus, cooperative and interested with logical and coherent speech. *Id*. However, Plaintiff's mood was often characterized as depressed and anxious, he exhibited a negligible degree of conceptual disorganization, and at times, his affect was blunted. *Id*. During his years of treatment at MABH, Plaintiff's Global Assessment of Functioning ("GAF") -- a scale used to rate how serious a mental illness may be by measuring how much a person's symptoms affect their day-to-day life on a scale of 0 to 100 – ranged from 58 to 60. A.R. 360-81. In September 2014, almost a year after starting treatment at MABH, Plaintiff's schizoaffective disorder was noted as "in remission." A.R. 384-386.

In the year prior to the June 1, 2017 alleged onset date, Plaintiff had three emergency room visits relating to his mental impairments. A.R. 538-70; 571-84; 585-94. Plaintiff also visited the emergency room in August 2017. A.R. 595-623. After a May 2017 emergency visit, Plaintiff began treatment at Oaks Integrated Care ("Oaks") for integrated case management, intensive outpatient treatment and support services, EISS, and medication management. A.R. 392-456. The record reflects that Plaintiff attended treatment at Oaks three days per week, three hours per day. A.R. 744, 776, 842. However, in 2018, Plaintiff began attending outpatient group and individual therapy on a weekly basis at Oaks while waiting to be linked to the evening partial care program. A.R. 836-841. Treatment notes reflect that Plaintiff's failure to attend the program and his verbally aggressive behavior, at times, were a barrier to treatment. A.R. 841. Plaintiff started with the evening partial care program in January 2018, attending three times per week for group therapy. A.R. 770-776, 811, 817. Plaintiff stopped attending in September 2018 through December 2018.

A.R. 763. After receiving an impending closure letter, Plaintiff resumed partial care treatment and was attending as of February 2019. A.R. 757.

The record reflects that, on October 25, 2017, Plaintiff was evaluated by Lawrence G. Mintzer, Ph.D. for a complete mental status examination as part of the process to obtain social security benefits. A.R. 457-460. Dr. Mintzer found Plaintiff oriented to person, place, and time. A.R. 459. Dr. Mintzer noted that Plaintiff was adequately groomed and drove himself to the appointment. A.R. 459. Plaintiff's speech was in normal limits and coherent; his motor activity appropriate; and his thought processes were goal-directed. A.R. 459. Plaintiff seemed somewhat depressed, his affect was somewhat restricted, and his concentration was described as "fair." A.R. 459. Dr. Mintzer found that Plaintiff's limitations are primarily caused by his psychological problems which are somewhat severe in degree. A.R. 459. Dr. Mintzer found Plaintiff's prognosis to be somewhat poor with an inability to manage his own personal funds in a competent manner because he at times becomes psychotic. A.R. 460.

Additionally, at both the initial level and on reconsideration of Plaintiff's applications for social security benefits, state medical consultants Drs. Steve Reed and Amy Brams determined, based on their assessment of the medical evidence, that Plaintiff would not have significant understanding and memory limitations; could have some moderate limitations in maintaining attention and concentration for long periods of time, performing activities within a schedule, maintaining regular attendance and being punctual, and working in coordination with or close proximity to others. A.R. 84-131. Additionally, Plaintiff would have moderate limitations in social interactions. *Id.* Regarding adaption limitations, Plaintiff would be moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* Both state medical consultants found

Plaintiff "Not Disabled." *Id.* Dr. Reed concluded that "[i]f [Plaintiff] adheres to his [treatment] plan, he would be able to understand and carry out instructions, maintain CPP, and adapt to changes in a work-like setting. Due to his mental impairment, [Plaintiff] would function best in a setting that has relatively few interpersonal demands." *Id.* Dr. Brams affirmed Dr. Reed's finding and further noted that Plaintiff had no worsening or new mental limitations and, although requested, they were unable to obtain updated medical records from Oaks. *Id.*

### C. Hearing Testimony

At the administrative hearing on March 15, 2019, Plaintiff was represented by counsel and testified. A.R. 41. The ALJ heard testimony from William Slaven, an impartial vocational expert. A.R. 41-42. Plaintiff testified that he has not worked since June 2017. A.R. 44. Historically, Plaintiff was employed in the IT profession, but he transitioned to pizza delivery due to waning concentration and his opinion that the internet was like the "mark of the beast." A.R. 44-47. Plaintiff testified that his last pizza delivery job ended when his doctor at South Jersey Behavioral Health quit unexpectedly causing him to fall out of compliance with his medication. A.R. 48. As a result, Plaintiff testified that his mental health symptoms worsened. A.R. 48. Plaintiff testified that he visited the emergency room three times in 2017. A.R. 49. Plaintiff became compliant with his medication again when he started attending Oaks. A.R. 50. Plaintiff has a car and drives. A.R. 63. Plaintiff also does a lot of walking and rides his bike about three times a week. A.R. 62

The ALJ heard testimony from William T. Slaven III, an impartial vocational expert. A.R. 66-72. Mr. Slaven testified that an individual with Plaintiff's vocational background and RFC, as assessed by the ALJ, would not be capable of working Plaintiff's previous jobs as a deliverer of food, electronics mechanic, or help desk technician. A.R. 67-68. Mr. Slaven identified the

following occupations classified as light and/or sedentary: housekeeping, final assembler, and addressing clerk, existing in significant numbers in the national economy. A.R. 68-69.

### D. ALJ Decision

In a written decision dated July 18, 2019, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 1, 2017, the alleged disability onset date, through the date of the ALJ's written decision. A.R. at 33.

Using the five-step sequential evaluation process, the ALJ determined at step one that Plaintiff had not engaged in any substantial gainful activity since June 1, 2017, the alleged onset date of disability. A.R. 26. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, schizoaffective disorder, and anxiety disorder. *Id*.

Next, at step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, meet or equal the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. A.R. 27. Specifically, in considering Plaintiff's musculoskeletal issues, the ALJ found, although severe, they did not meet the criteria of any listed impairment under listing 1.04.[4] The ALJ relied on the lack of evidence in the medical record or from a treating physician confirming that claimant's impairments are so severe that they meet a listing level. A.R. 27.

Regarding Plaintiff's mental impairments, schizoaffective and anxiety disorders, the ALJ found that they do not meet or medically equal the criteria of Listings 12.03 and 12.06. A.R. 27-28. The ALJ also found that Plaintiff's conditions did not satisfy the "paragraph B" or "paragraph C" criteria. A.R. 27-28. For these listings, a claimant must prove that he meets both the "paragraph A"

---

[4] Listing 1.04 has since been modified.

criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The paragraph B criteria require at least one extreme or two marked limitations in any of four areas of mental functioning. *See id*.[5] The paragraph C criteria require that the mental disorder be "serious and persistent," and supported by evidence of both medical treatment and marginal adjustment. *See id*. Based on the record evidence, the ALJ found that Plaintiff's limitations in all areas of functioning were only "moderate." A.R. 27-28. Because Plaintiff's mental impairments did not cause two "marked' limitations or one "extreme" limitation, the paragraph B criteria were not satisfied. A.R. 28. The ALJ also found that the paragraph C criteria were not met because the record established that Plaintiff was able to live outside of a supportive living arrangement and adapt to new demands and changes in the environment at a minimum level. *Id.*

Between steps three and four, the ALJ determined Plaintiff's RFC. The ALJ determined that Plaintiff had the RFC to perform light work, except "no climbing ladders, ropes, and scaffolds." A.R. 29. The ALJ further found that Plaintiff requires a stable work environment and could perform simple, routine tasks that are goal-oriented, should have no significant interaction with the public, and limited interaction with supervisors and co-workers. *Id*. The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not consistent with the medical and other evidence. *Id*. Regarding Plaintiff's degenerative disc disease, the ALJ found that while Plaintiff has endorsed pain and a

---

[5] These areas of functioning are (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

July 2012 MRI demonstrated degenerative changes, the physical exam findings did not suggest Plaintiff was as limited and his spine was non-tender. A.R. 30.

Regarding Plaintiff's schizoaffective and anxiety disorders, the ALJ referenced record evidence of Plaintiff's anger, delusions, hallucinations, and paranoia, but found that upon mental examination, Plaintiff was cooperative with good impulse control, had a logical thought process, his concentration and memory have been intact, and he has been oriented to time, place, and person. A.R. 30. The ALJ found the opinions of state agency consultants Steven Reed, Ph.D., and Amy Brams, Ph.D., persuasive due to their consistency with the record. Dr. Reed found that Plaintiff could understand and carry out instructions, maintain concentration, persistence, and pace, and adapt to changes in a work life setting. Dr. Brams affirmed these findings. A.R. 30. The ALJ considered the opinion of Dr. Rhoades but found it unpersuasive. A.R. 31. The ALJ referenced Dr. Rhoades's opinion that Plaintiff would be absent three or more days from work and off task 40 percent on a sustained basis. *Id.* The ALJ stated that this finding was inconsistent with and not supported by the medical evidence of record. *Id.* The ALJ found that the limitations were too restrictive and based on Plaintiff's subjective reports. *Id*. Finally, the ALJ indicated that Dr. Rhoades's opinion did not address the impact of Plaintiff's "repeated incidents of intoxication not representative of his baseline functioning." *Id.*

Based on Plaintiff's RFC and testimony from a vocational expert, the ALJ found, at step four, that Plaintiff was "unable to perform any past relevant work." A.R. 31. At step five, however, the ALJ found that "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including those of cleaner or housekeeping (1,500,000 jobs nationally),

addressing clerk (200,000 jobs nationally), and final assembler (optical goods) (330,000 jobs nationally). A.R. 32. Accordingly, the ALJ found that Plaintiff was not disabled. A.R. 33.

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) providing the court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012). Therefore, if the ALJ's findings of fact are supported by substantial evidence, the reviewing court is bound by those findings, even if it would have made a different determination. *Id.* (citing *Fargnoli*, 247 F.3d at 38). The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

Remand is appropriate if the ALJ decision lacks adequate reasoning, *Fargnoli*, 247 F.3d at 42, contains contradictory findings, *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000), or if the ALJ failed to conduct a complete review and explicitly weigh all relevant, probative, and available evidence in the record, *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979). "Remand is not required where an error or oversight would not affect the outcome of the case." *Kalb v. Comm'r of Soc. Sec.*, No. CV 17-5262 (JBS), 2018 WL 6716822, at *6 (D.N.J. Dec. 21, 2018)(citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

**IV. DISCUSSION**

Plaintiff offers two theories in support of his argument that substantial evidence does not support the ALJ's RFC assessment. As such, Plaintiff requests that the Court remand this matter with instructions for the ALJ to properly evaluate evidence to be discussed *infra*. The Court addresses each theory in turn.

**A. The ALJ's Alleged Erroneous Evaluation of the Rhoades Opinion**

Plaintiff argues that substantial evidence does not support the mental elements of the ALJ's RFC assessment because the ALJ erroneously evaluated the opinion of Dr. Rhoades. Pl.'s Br. 7-12. Plaintiff argues more specifically that the ALJ erred by:

- Speculatively, unjustifiably, and improperly rejecting Dr. Rhoades's opinion on the premise that it was based on Plaintiff's subjective reports;

- Improperly rejecting Dr. Rhoades's opinions as inconsistent with the medical evidence when the ALJ failed to address Plaintiff's attendance at Oaks for several hours per day, several days per week;

- Rejecting Dr. Rhoades's opinion based on its failure to address Plaintiff's substance use, yet the ALJ never found that Plaintiff had a substance use disorder nor did the ALJ request the record be supplemented to address this issue;

- Failing to adequately evaluate important medical evidence by only citing two findings of Dr. Rhoades's opinion and broadly rejecting the others without specific reference to the same.

Pl.'s Br. 7-12. Finally, Plaintiff argues the ALJ's failure to appropriately consider Dr. Rhoades's opinion was harmful because the opinion established that Plaintiff's limitations fell

squarely within the vocational expert's testimony demonstrating that Plaintiff would not be suitable for the jobs identified as appropriate for Plaintiff. *Id. at 12*.

The Commissioner largely restates the ALJ's findings approvingly. Def.'s Br. [ECF No. 16]. The Commissioner argues that, in compliance with the regulations, the ALJ precisely articulated how he considered Dr. Rhoades's work-preclusive opinion and explained how the same was unpersuasive. *Id.* at 9. To this end, although not referenced in the ALJ's decision, the Commissioner references Plaintiff's hearing testimony providing that his symptoms were "manageable with meds." *Id.* The Commissioner also notes that the ALJ supported his conclusion by rightly noting that Dr. Rhoades's opinion was inconsistent with and not supported by the medical evidence of record; the restrictions were too limited and based on Plaintiff's subjective reports; and failed to address the impact of Plaintiff's repeated incidents of intoxication. *Id.* at 10. In addressing the latter incident of intoxication, the Commissioner refers to a single incident of Plaintiff's intoxication not found within the ALJ's decision. *Id.*

The Commissioner further argues that the ALJ referenced ample evidence throughout the opinion to counter the extreme limitations suggested by Dr. Rhoades, including Plaintiff's cooperation during exams, logical thought processes, intact concentration and memory, and good impulse control. *Id.* The Commissioner contends that the ALJ's reliance on the medical opinions of Drs. Reed and Brams, state agency consultants, as persuasive, provides additional support for the ALJ's finding that Dr. Rhoades's opinion was not. *Id.* at 11.

Here, the Court finds that it is unable to meaningfully review whether substantial evidence supports the ALJ's RFC finding due to the failure to set forth adequate explanation or reference to the record to reject Dr. Rhoades's opinion. *See Fargnoli*, 247 F.3d at 41 (quoting *Cotter v. Harris*,

642 F.2d 700, 705 (3d Cir. 1981)("an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis of the decision . . ."). In its review of medical source medical opinions, the ALJ shall explain how the ALJ considered the supportability and consistency in the determination. *See* 20 C.F.R. § 404.1520c; §416.920c. In support of the finding that Plaintiff could perform light work, the ALJ addressed the following select findings from Dr. Rhoades's opinion: Plaintiff would be absent three or more days from work and off task 40 percent on a sustained basis. In determining Dr. Rhoades's finding was unpersuasive, the ALJ first baldly stated that the opinion was "inconsistent with and not supported by the medical record." There is no reasoning, rationale, or references to record evidence to support this finding.[6]  For instance, the Court cannot ascertain if or how the ALJ considered Dr. Rhoades's reference to Plaintiff's participation in a three day per week, three hour per visit partial care program since June 2017.

Next, the ALJ further states without explanation or reasoning to permit meaningful review, that Dr. Rhoades's opinion was "too restrictive" and based on Plaintiff's "subjective reports." There is no reasoning supporting this finding of restrictiveness. Moreover, the Court can only glean three sections of Dr. Rhoades's opinion that appear to be based upon Plaintiff's subjective

---

[6]  The Commissioner attempts to support the ALJ's finding that the Dr. Rhoades's opinion was not persuasive by referencing Plaintiff's testimony that his symptoms, depression, paranoia, and anxiety are manageable with meds. The ALJ did not reference this testimony nor did the ALJ reference any evidence of Plaintiff's hospitalizations wherein he fell out of compliance with his medication. It all is seemingly relevant evidence. Notably, while the ALJ cited Dr. Reed's opinion, the ALJ selectively omitted a portion of Dr. Reed's sentence directly related to this topic: "***If [Plaintiff] adheres to his [treatment] plan,*** he would be able to understand and carry out instructions, maintain [concentration, persistence, and pace], and adapt to changes . . ." A.R. 93. The ALJ cited the latter portion of the sentence only. Because the Court does not know if or how the ALJ considered the aforementioned record evidence, the Court cannot review the finding that Plaintiff is "not disabled."

report. Again, the Court is struggling to determine the basis – aside from conclusory statements – for the rejection of Dr. Rhoades's report.

Finally, the ALJ also rejected Dr. Rhoades's opinion because it failed to address the "impact of the claimant's repeated incidents of intoxication not representative of his baseline functioning." The ALJ does not explain the import of this statement as it relates to the RFC assessment, does not make findings relating to a substance abuse disorder, does not identify the "repeated" incidents of intoxication, or reconcile the opinions of Drs. Reed and Brams stating that there is no evidence of any substance abuse disorder or drug addiction and alcohol (DAA) issue. A.R. 107, 131. The Commissioner points to one incident of intoxication within the record in an attempt to explain the ALJ's finding, however, one incident is far different from "repeated" incidents and the ALJ did not provide references to any incidents. The Court cannot adequately review the ALJ's decision to reject Dr. Rhoades's opinion as unpersuasive. Thus, the Court will remand this matter. On remand, the ALJ must review all the relevant medical evidence, explaining both conciliations and rejections. *Burnett*, 220 F.3d at 122.

**B. The ALJ Unreasonably Relied on Plaintiff's Daily Activities as Probative Evidence of His Ability to Perform Sustained Work**

Plaintiff also argues that the ALJ unreasonably relied on Plaintiff's activities of daily living (alternatively referred to as "daily activities") as probative evidence of his ability to perform sustained work. Pl.'s Br. 12-13. Plaintiff contends that while the record establishes that Plaintiff can clean his house, prepare meals, take care of his own personal care, and shop, the ALJ unreasonably found that these tasks require significant mental demand and the outlined activities do not establish that Plaintiff can perform full-time work. *Id.* at 13. Plaintiff argues that the ALJ, in

14

considering Plaintiff's daily activities, failed to evaluate Plaintiff's adult partial care. *Id.* at 14. Plaintiff contends that a person's attendance at a partial care facility for a psychotic disorder several times a week for several hours is an activity consistent with an inability to perform sustained work. *Id.*

The Commissioner argues that the ALJ properly considered Plaintiff's daily activities, along with medical treatment records, in the symptom evaluation to support a finding that Plaintiff was not as limited as claimed. Def.'s Br. 13. The Commissioner argues that the ALJ's finding was supported by substantial evidence. *Id.*

Here, this Court cannot meaningfully review the ALJ's finding that Plaintiff's daily activities suggest that Plaintiff is not as limited "as alleged." The ALJ cites to a list of Plaintiff's daily activities such as cleaning a house, preparing meals and shopping in a store, etc., finds that the daily activities require "significant mental demand," and baldly states the activities are not consistent with the "level of limitation the [Plaintiff] alleges." First, the decision is silent as to how the ALJ reached the finding that the referenced daily activities require "significant mental demand" and if the ALJ considered such mentally demanding activities as relevant to Plaintiff's ability to sustain work-related mental demands. Second, the Court cannot ascertain which of Plaintiff's alleged symptoms the ALJ considered inconsistent with Plaintiff's daily activities. For instance, prior to addressing the issue of daily activities, the ALJ points to Plaintiff's symptoms that he does not like being around people, feels irritable, and does not trust people. However, the ability to clean a home, cook, or sew would not be inconsistent with these reported symptoms – indeed, such a finding would appear unreasonable. Thus, the Court is left wondering which

15

discrete symptoms the ALJ assessed to reach the findings regarding daily activities.[7]  SSR 96-8p

("The RFC assessment must include a narrative discussion describing how the evidence supports

each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence

(e.g., daily activities, observations)."). Thus, the Court is unable to review whether there was

substantial evidence supporting the RFC determination. Consequently, the Court will remand this

matter to allow the ALJ to adequately set forth reasoning supporting his findings relating to

Plaintiff's daily activities as same relate to Plaintiff's claimed limitations.

### V. CONCLUSION

For these reasons set forth above, the Court will remand the ALJ's decision. An

accompanying Order will be entered.

Dated: March 21, 2022                        s/ Karen M. Williams
                                             KAREN M. WILLIAMS
                                             United States District Judge

---

[7]  As with Dr. Rhoades's opinion, Plaintiff also claims here that the ALJ's assessment fails to include a discrete recurring activity of Plaintiff – his attendance at partial care several times per week. SSR 96-8p states that "[t]he RFC assessment must be based on *all* relevant evidence including [t]he effects of treatment, including limitations or restrictions imposed by the mechanics (e.g., frequency of treatment, duration, disruption to routine, side effects of medication) . . ." Like his daily activities, Plaintiff's recurring partial care treatment several times a week for the very impairments at issue seems like relevant evidence. Here, the Court cannot ascertain if the ALJ considered, credited, or rejected Plaintiff's partial care treatment as it is not referenced in the ALJ's RFC assessment.